JAMES CARRIGAN *vs.* WASHBURN AND MOEN MANUFAC-
TURING COMPANY.

Worcester.   October 6, 1897. — January 6, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Personal Injuries — Employers' Liability Act — Master and Servant — Assump-
tion of Risk — Evidence — Inference of Consent to Risk.*

Two vats, one containing vitriol and the other water, were placed next to each
other in the floor of a wire mill where A. had worked for many years in
taking rolls of wire from the reels and loading them on a car.  He knew that
one vat contained vitriol, but not which one.  When the vats were not in use
there were covers on them which were level with the floor; and there was no
railing or other protection or means of warning provided against falling or
walking into the vats when the covers were off and the vats were in use.  He
had seen them uncovered but twice, and then in the daytime.  One evening,
about six or eight weeks after the vats were put in, the vats never having been
opened in the evening before, A. started to recover a bundle of wire which had
fallen into the elevator well, and for which he was held responsible.  The steam
arising from the vats as the hot wire was dipped into them obscured the light
and rendered their outlines indistinct.  He had the vats in mind, and was mov-
ing cautiously, but fell into the vat of vitriol and was injured.  *Held,* in an
action against his employer for his injury, that he must be deemed to have
appreciated and assumed the risk; and that he was not harmed by the exclusion
of evidence that, when he had seen the vats open before and in use, he had no
difficulty in seeing their outlines.

If vats, one of which contains vitriol, are placed in the floor of a wire mill, and
when the covers are off are not protected by a railing or otherwise, and a work-
man previously employed there continues in his employment without any ob-
jection on account of the additional risk to which he is subjected by them, his
consent to the risk is to be inferred.

TORT, for personal injuries occasioned to the plaintiff while
employed in the defendant's wire mill, by falling into a vat of
vitriol.   The declaration contained three counts, one at common
law alleging negligence of the defendant in not furnishing suit-
able machinery and appliances, and in not keeping machinery
and appliances in proper condition and repair, and two under
the employers' liability act, St. 1887, c. 270, one alleging neg-
ligence of the superintendent, and the other negligence of a
person in charge of the ways, works, or machinery.   Trial in
the Superior Court, before *Hopkins*, J., who directed the jury to

return a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*H. L. Parker & H. L. Parker, Jr.*, for the plaintiff.

*F. B. Smith,* ( *W. S. B. Hopkins & W. S. B. Hopkins, Jr.* with him,) for the defendant.

MORTON, J. The plaintiff had been in the employ of the defendant almost continuously for about fourteen years before the accident happened, and for several years he had worked off and on in that part of the works where the accident took place. His work was the taking of rolls of wire from the reels and loading them on a car. Six or eight weeks before the accident two vats had been placed next to each other in the floor in that part of the shop where the plaintiff worked. One contained vitriol and the other water. There was testimony tending to show that the plaintiff knew that one contained vitriol, but not which one. When the vats were not in use there were covers on them which were level with the floor. "There was no railing or other protection or means of warning provided against falling or walking into the vats" when the covers were off, and the vats were in use. There is nothing to show that the plaintiff was not familiar with the location of the vats, and with the fact that there was no railing or guard to prevent one from falling into them, though he had seen them uncovered but twice, and then in the daytime. The accident happened in the evening, and the vats never had been opened in the evening before. The steam rising from them as the hot wire was dipped into them obscured the light, and rendered their outlines indistinct, and there was some testimony tending to show that one of the three arc lamps which were used to light the place was out; but there was nothing to show what caused the lamp to go out, or how long it was out, whether accidentally and for a moment, or longer and in consequence of some defect in the machinery. The plaintiff started to recover a bundle of wire which had fallen into the elevator well, and for which he was held responsible. He had the vats in mind, and was moving cautiously, but he fell into the one containing the vitriol. It is evident that he understood the danger which there was of falling into the vats, and he also knew that he might fall into the one containing vitriol. He appreciated the risk and

must be held, we think, to have assumed it. If the want of a railing was a defect, it was an obvious one, which he knew and understood, (*Moulton* v. *Gage*, 138 Mass. 390,) and so with the obscurity, whether it arose from a want of light or from the steam, or both.   It is not contended that the vats themselves were defects, or that they could have been used without removing the covers; (*Young* v. *Miller*, 167 Mass. 224, *Willetts* v. *Watt*, [1892] 2 Q. B. 92, and *Anthony* v. *Leeret*, 105 N. Y. 591, 600;) and we think that the fact that they were put in long after the plaintiff entered the defendant's employment is under the circumstances immaterial.   He knew that they were there, and that there was no railing, and that when the covers were off there was danger of falling into them, and he continued in the defendant's employment without any objection on account of the additional risk to which he was subjected by them.   A majority of the court are of opinion that his consent to the risk is to be inferred just as much under such circumstances as it would have been if they had been there when he entered the defendant's employment originally.

The plaintiff was not harmed by the exclusion of the testimony which was offered.*

*Exceptions overruled.*

---

* The plaintiff having testified that, prior to the accident, he had seen the vats uncovered on two occasions only, and then in the daytime, he was asked the following question, which, upon the defendant's objection, was excluded: "At the times when you had seen these vats open before, had you any difficulty while they were working with them, using them, dipping wire in them, — had you any difficulty in seeing the outline of them?"