LINDSAY v. NEW YORK, N. H. & H. R. CO.

(Circuit Court of Appeals, Second Circuit. December 6, 1901.)

No. 24.

1. RAILROADS—EMPLOYES—OBVIOUS DANGER—ASSUMPTION OF RISK.

Where a brakeman who had been continuously employed in a railroad yard for over nine months was injured by falling into a drain, which, with 118 other similar drains, had plainly existed in the yard during all the time of his employment in substantially the same condition, he should be presumed to know of the existence of such drains, and to have assumed the risk thereof.[1]

2. SAME—QUESTION OF LAW—JURY.

Where a certain risk of an employment is plainly observable to an employé, and he continues to work where such risk is constantly encountered, he assumes the risk, as a matter of law, and the question is not for the jury.

In Error to the Circuit Court of the United States for the Eastern District of New York.

[1]Assumption of risk incident to employment, see note to Railroad Co. v. Hennessey, 38 C. C. A. 314.

Sumner B. Styles, for plaintiff in error.
Henry N. Taft, for defendant in error.

Before WALLACE and LACOMBE, Circuit Judges, and TOWNSEND, District Judge.

LACOMBE, Circuit Judge. The claim of the plaintiff is, in substance, that while discharging his duty as a brakeman (or pin-puller) in one of the yards of the defendant, at about 2 a. m. July 9, 1899, he stepped or slipped into a sluiceway or drain that ran under and across the tracks of the defendant railroad, which was open and uncovered at that point where the plaintiff slipped and fell into the same, and that it was directly in the path of the plaintiff in the discharge of his duty as such brakeman, and by reason of his fall he was run over by the cars he was about to couple and severely injured. He testified that he was employed in this yard continuously since September of the year before. It will be perceived that, if upon the facts of the case it appears that the risk he encountered to his hurt that night was a risk which it must be held he assumed when entering into or continuing in the employ of defendant, there will be no necessity to examine into the other questions, which have been argued here at length, viz. whether defendant was negligent, and whether plaintiff's negligence contributed. For the present, therefore, it may be assumed that the place where he was set to work was not reasonably safe, and that he acted on the night in question with reasonable prudence under all the circumstances.

The rule of law governing assumption of risk is familiar. The employé has the right to assume that the employer will use reasonable care to secure him a safe place to work in. He may rely on this assumption, subject, however, to the exception that, where there exists a defect known to him, or plainly observable by him, he cannot recover for an injury caused by such defect if he continues to work where it exists. Railway Co. v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188. Where there is reasonable ground for difference of opinion as to whether the defect was "plainly observable by him," the jury should decide; but when it is plainly thus observable the court will dispose of the case by direction of a verdict. Citations of opinions in other cases are not especially helpful, since the decision of each case necessarily depends on its own facts, and these are rarely the same in any two cases. Plaintiff's hours of work were from 11 p. m. to 7 a. m. He was generally working all the time, as it was a busy yard, and there was a great deal of switching done there. He was continuously employed from September till July 9th. It was part of his duty to run along the path between the tracks beside or ahead of moving cars, and he was continually crossing the drains which intersected the tracks. He testified that there were no lights for the purpose of lighting the yard, and that the lantern carried at night threw but very little light on the roadbed; and that, although he knew there were drains there, he did not know where they were,

nor had he ever noticed that they projected beyond the ties. The drains were made of wood, and were about the same color as the ties. They were made of 2-inch planks, and were 10x10 inches on the inside, and extended beyond the ties at the top from 3 to 5 inches, and then the ends sloped down to the bottom of the drains, so that the bottom of the drain extended beyond the ties into the space between the tracks from 10 to 12 inches. The system of drainage, which was there when plaintiff came to the yard, was uniform. All the sluiceways or drain boxes were similarly constructed. There were 119 sluiceways or separate drain boxes, and double that number of openings in the yard, 28 of them near the place where the plaintiff was injured. Such substantial structures as these, projecting several inches into the pathway between the tracks along which plaintiff was continually moving, would seem to be "plainly observable"; and the photographs, which were in evidence and whose accuracy is not disputed, show that there was nothing latent about the risk they introduced. If the plaintiff's sole opportunity of observation had been in the obscurity of night, he might have worked there a long time without observing them. But when it appears that during the months of April, May, and June, and the first week in July, he was moving back and forth over these open and projecting drains every day from daybreak until 7 a. m., he must be held chargeable with knowledge of their existence, and of whatever risk to one using the pathway their appearance would indicate even to the casual observer.

The judgment is affirmed.