OTTO W. SCHULTZ, Respondent, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 28, 1910.

1.    MASTER AND SERVANT: Duty of Master to Furnish Reasonably Safe Place to Work: Right to Adopt His Own Methods. In performing his duty of furnishing his servant a reasonably safe place to work, a master is not bound to follow a particular method of conducting his business, nor is a railroad company compelled to furnish to one of its baggage men a car of a certain standard of interior arrangement and equipment.

2.    ———: ———: ———: Assumption of Risk.    It is not negligence for a railroad company to carry a can of oil in its baggage car simply because it could have carried such oil in another place.    An injury to an employee resulting because of the accidental spilling of oil on the floor would not convict the master of negligence, inasmuch as the accidental spilling of oil was an incident likely to happen from the hurried use of the can of oil.    If, however, the spilling of oil on the floor made the floor unnecessarily dangerous, and this condition continued

without correction, when the railroad company, by the exercise of ordinary care, could and should have corrected this condition, then it was guilty of negligence.

3. ——: ——: ——. The risks assumed by a servant do not include those which are caused by the negligence of the master, and the master cannot relieve himself from liability for the injurious consequences of his own negligence by contract, expressed or implied.

4. ——: ——: ——: Negligence: Notice. There was sufficient evidence in this case to show that the defendant had actual as well as constructive notice of the defective condition of the floor in question.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

AFFIRMED.

*M. A. Low* and *Sebree, Conrad & Wendorff* for appellant.

The court committed error in refusing to give the demurrer to the evidence and the instruction in that nature, requested by defendant.   Kane v. Railroad, 112 Mo. App. 650; Murphy v. Railroad, 115 Mo. 111; Swearingen v. Railroad, 221 Mo. 644; George v. Railroad, 125 S. W. Rep. 196; Hager v. Terminal Association, 207 Mo. 302; Slagel v. Lumber Co., 138 Mo. App. 432; Pulley v. Oil Company, 136 Mo. App. 172; Knorpp v. Wagner, 195 Mo. 637; Nealand v. Railroad, 173 Mass. 42; Cudahy v. Marcan, 106 Fed. 645; Soversnick v. Schwarzschild, 125 S. W. Rep. 1192.

*Angevine, Cubbison & Holt* and *Bird & Pope* for respondent.

JOHNSON, J.—This is a personal injury suit prosecuted by a servant against his master on the ground that the injury was caused by the negligence of the master.   The answer in addition to a general

denial pleads contributory negligence and assumed risk as affirmative defenses.   The trial resulted in a verdict and judgment for plaintiff in the sum of fifteen hundred dollars and the cause is here on the appeal of defendant.   Plaintiff was a baggageman in the service of defendant on "a run" between Kansas City and Fort Worth, Texas.   He was an experienced railroad man and had been on that run a long time.   Five days were consumed by baggagemen in making the round trip from Kansas City to Fort Worth, and plaintiff was on the return trip when the injury occurred.   Two baggagemen were employed in the baggage car and plaintiff's injury was caused by his fellow employee slipping on the floor of the car while both were busy unloading sample trunks at a station in Oklahoma.   The mishap was caused by a large grease spot on the floor which made it slippery and interfered with the proper handling of heavy trunks.   Plaintiff's right foot was crushed by the fall of a heavy trunk and the slipping of plaintiff's companion on the greasy place in the floor caused the trunk to fall.

The petition alleges "That the said damages to plaintiff were caused by the carelessness and negligence of said defendants in failing to provide him with a safe place to work, as it was required to do by the common law and the law of the State of Oklahoma. That oil had been spilled upon the floor of said car, and had remained there such a length of time that said defendant knew of the presence of said oil, or ought to have known of the same, by the exercise of reasonable care, in time to have removed the same from the floor of said car, and that by reason of said oil being upon said floor, said floor was rendered slippery and dangerous to the plaintiff when engaged in his said work of unloading baggage from the said car, and by reason of the slippery and dangerous condition of the floor of said car, plaintiff was caused to slip and thereby

said trunk fell upon his said right instep and injured him."

The spot in the floor had been made by oil spilled from a two gallon can carried in the baggage car. Oil and waste were used in the treatment of "hot boxes" and were carried in a tool box kept in the car underneath the water tank. After using the oil can, a trainman would return it to the door of the baggage car and a baggageman would replace it in the tool box. On one or more occasions the can had been accidentally upset and had spilled oil on the floor. The baggagemen, had wiped up the oil and had sprinkled ashes and sawdust on the place but the oil had soaked into the floor and spread over a good sized place. No oil had been spilled in the four months preceding the injury and the grease spot, therefore, was an old one. The customary place for carrying the oil can was in the tool box we have described, but the evidence of plaintiff shows that oil sometimes was carried in a large tool box built under the floor of the car in which were kept various tools and the "wrecking outfit" and that the oil can for hot boxes could have been kept in that tool box. There is evidence that plaintiff called the attention of the trainmaster to the grease spot, complaining that it made the floor slippery and that the trainmaster promised "to take the matter up and have it attended to," remarking that the place "wouldn't do" but that nothing was done to repair the defect. It appears that the baggagemen did not attend to cleaning or repairing their cars but that such work was done at one of the terminal yards. The only questions presented for our consideration are those discussed in the argument of defendant that its demurrer to the evidence should have been sustained.

Our first inquiry shall be directed to the question of the negligence of defendant. In the performance of the fundamental duty of mastership to exercise reasonable care to furnish the servant a reasonably safe

place in which to work and reasonably safe tools with which to work, defendant was not bound to follow a particular method of conducting its business, nor to provide a car of a certain standard of interior arrangement and equipment. Within the bounds of reasonable care, defendant had the right to conduct its business in its own way without danger of being called to account for not pursuing another and better way. It is of no importance that defendant could have carried the oil and waste for emergency use in the tool box under the car. Doubtless for very good reasons of its own, it selected the baggage car as the best place for them and we think it would be an unwarrantable invasion of defendant's right to conduct its business in its own way for either court or jury to say that defendant should have carried that can in some other place than that selected as the best and most suitable place for all purposes.

There is no room to infer that defendant was negligent in carrying the can in the baggage car. And, further, we sanction the argument of defendant by saying that under all the facts and circumstances of the situation, the accidental spilling of oil from the can to the floor of the car would be an incident to be anticipated as likely to happen from a hurried use and replacement of the can. Such risks as plaintiff might incur from that method of conducting the business should be regarded as incidental to the employment and as such belonged to the risks assumed by him as a part of his contract of employment.

But it has been held repeatedly by the courts of last resort in this State that the risks assumed by the servant do not include those which are caused by the negligence of the master. The most recent expression on this subject is by the Supreme Court in George v. Railroad, 225 Mo. 364, 125 S. W. 209, where the doctrine is reiterated that it is against the policy of the law to suffer the master to relieve himself from liability for

Schultz v. Railroad.

the injurious consequences of his own negligence by contract expressed or implied. Knowing that the work of a baggageman in unloading heavy trunks from the car was performed usually in haste and that a slippery floor would increase the natural risks of the employment by its tendency to cause trunks to slide and the footing of the baggagemen to be insecure, defendant owed the duty to plaintiff to exercise reasonable care, not only to provide a floor adapted to the uses of the business, but also to keep it in reasonable repair. Whilst, as we have shown, defendant would not be liable for risks incurred by plaintiff from the accidental spilling of oil on the floor, that immunity should not be extended to include the act of defendant in allowing the floor to remain in a defective and dangerous condition after a reasonably careful and prudent master should have discovered and repaired it. The evidence shows that, saturated with grease as it was, the floor was not reasonably safe but was defective, and we think it was negligence for defendant to leave it in that condition. Not only does it appear that defendant had constructive notice of the existence of the defect in time to have repaired it had reasonable care been exercised, but that defendant had actual notice and promised to make the necessary repairs. Plaintiff has succeeded in supporting his contention that the proximate cause of his injury was the negligence averred.

The judgment is affirmed. All concur.