[S. F. No. 8248.   Department Two.—February 8, 1918.]

## MANUEL DULUZ, Respondent, v. ALASKA PACKERS' ASSOCIATION (a Corporation), Appellant.

Negligence—Employer and Employee—Action for Personal Injuries —Safe Place to Work—Assumption of Risk—Law of Alaska Where Injury Occurred.—In an action by an employee against an employer, for damages sustained by the employee through slipping on the wet floor of a salmon cannery in Alaska and falling into a vat of boiling lye where he was engaged in dipping cans of salmon, where the plaintiff relied on defendant's negligence in failing to

CLXXVII Cal.—30

supply a safe place to work, and the defendant denied the negligence and also relied on the defense of assumption of risk, which doctrine it was conceded is controlling under the law of Alaska where the injury occurred, and where the employee assumes "all the risks and dangers incident to his employment open, obvious, and apparent, and respecting which he had the same knowledge and opportunity to observe as his employer," the evidence is examined and found insufficient to sustain a verdict for the plaintiff, since assuming that the several facts that there were no guards around the lye vats, that the floor was slippery from water and grease, that no cleats were nailed on the boards, and that the floor had sunk so that it sloped toward the vat allowing water to run into it and that it was "springy," were all defects rendering the place furnished not a safe place to work, these conditions were all open, obvious, and apparent, and the plaintiff had the same knowledge and opportunity to observe them as his employer.

ID.—FOREIGN LAW, HOW PROVED—HARMLESS EXCLUSION OF ORAL TESTIMONY.—While under sections 1900, 1901, and 1902 of the Code of Civil Procedure oral testimony of skilled witnesses is, among other things, admissible as evidence of the unwritten laws of a sister state, the use of published reports of decisions is more satisfactory, and where, by the consent of both parties, such reports are offered in evidence, the exclusion of the testimony of a witness is not prejudicial error.

ID.—PROOF OF LAW OF ALASKA—INSTRUCTIONS BY COURT.—The law of Alaska in such case was to be proved by competent and proper evidence to the satisfaction of the trial judge and by him stated to the jury in its application to the facts of the particular case.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge.

The facts are stated in the opinion of the court.

Chickering & Gregory, George H. Whipple, and Evan Williams, for Appellant.

James W. Cochran, S. L. Mash, Manuel Duluz, *in pro. per.,* and Walter J. Thompson, for Respondent.

WILBUR, J.—This is an appeal from a judgment after verdict in favor of plaintiff for personal injuries received by him while employed by the defendant at its fish cannery in Alaska. Plaintiff relies upon defendant's negligence in

failing to supply him a safe place to work, and defendant denies such negligence, and also relies upon the defense of assumption of risk.

It is conceded that the law of Alaska, the place of the injury, controls. This proposition was thus stated by the trial court in its instructions: "You are instructed that as far as the liability of the defendant Alaska Packers' Association is concerned the law of Alaska will govern in this case; and you are further instructed that under that law Manuel Duluz, the employee in this case, assumed all the risks and dangers incident to his employment that were at the time of his employment open, obvious, and apparent, and respecting which he had the same knowledge and opportunity to observe as his employer." Appellant claims that under this law there is no evidence to support the verdict and judgment. Defendant is entitled on this appeal to the most favorable view of the evidence and all reasonable inferences therefrom. There is, however, no substantial disagreement in the evidence. The plaintiff, at the time of his injury, was engaged with others in dipping steel crates containing 144 one-pound cans of salmon into a 4'x4' vat of boiling lye, filled to within three inches of the top, resting on the floor on which he stood and three feet in height. The crates were moved over the vat and soused up and down therein by means of a trolley and lifting device operated by other employees. Plaintiff's duty was to hook two lifting chains hanging from the trolley into the crate, and his associate on the other side hooked a third chain thereto. They then guided the crate over the lye vat, and after sousing therein guided it to another vat filled with water, afterward unhooking the chains and returning therewith for the next crate. In so doing plaintiff slipped on the wet floor so that his arm went into the lye vat and was severely burned. The top of the vat, it will be observed, was about at the waist line. Plaintiff testifies, "There was a good deal of water on the floor and I slipped, and that is how I came to fall. The board on which I stood was about a foot wide. I was working three days at the vat prior to the accident." He testified that it was wet and slippery when he first started to work at the wash lye tank and so continued all the time he worked there, and that although he knew it was wet and slippery he made no complaint. It is shown that the nature of

the work caused the lye and water to splash over the sides of the tank; that the lye had softened the smooth surface of the board on which plaintiff worked so that if struck a hard blow its smooth surface would be dented. It will be observed that the duties of the employer and of the employee, under the law of Alaska, and under the common law, are correlative. Taking the instruction of the court as given in this case as a correct statement of employer's duty, he "is not required to furnish appliances which are absolutely safe, nor is he bound to furnish the best that can possibly be had. He is, however, under an obligation to exercise reasonable and ordinary diligence in their selection, and to furnish to his servant such as are reasonably safe and adapted to perform the work for which they are designed, and which with ordinary care and prudence on the part of the servant render it reasonably probable that they can be used by him in the ordinary exercise of his employment without danger to himself," etc. The respondent points out several alleged defects in the place and appliances furnished him. First, that there were no guards around the lye vat. If we assume that a man of ordinary prudence would in the exercise of ordinary prudence furnish such guard-rail, the danger from its absence "was open, obvious, and apparent" and the plaintiff "had the same knowledge and opportunity to observe as his employer." Second, that the floor was slippery from water and grease. But this must have been as apparent to a man who had walked over it for three days as to his employer. Third, that no cleats were nailed on the boards. This, too, must have been as obvious to plaintiff as to his employer. Indeed, if he had stumbled over a cleat instead of slipping on a board without a cleat, it might with equal force be claimed to be an act of negligence to provide cleats. But, in either case, the answer is that plaintiff knew the conditions, and assumed the risk. Fourth, it is claimed that the floor had sunk somewhat so that it sloped sufficiently toward the vat so that water ran toward it, and that it was "springy." There is no evidence that either the slope of the floor or the softness of the floor caused plaintiff's fall, but in any event the condition was so obvious that plaintiff could not fail to observe it. Certainly he had as good an opportunity as his employer. Respondent claims, however, that the rule of assumption of risk does not apply, and cites

the rule in Shearman and Redfield on Negligence (sec. 95), viz.: This rule has, however, been very properly held to be applicable only to such defects as the servant ought reasonably to have foreseen might endanger his safety.  If a person of ordinary prudence would not have believed that the servant could in the regular discharge of his duties be injured by the defect, the servant may properly disregard it without losing his right to complain if while pursuing his ordinary course he suffers from such defect.''  But here, where the entire situation is open to the observation and understanding of the employee as well as the employer, it is fatal to plaintiff's case to hold that a ''person of ordinary prudence would not have believed that the servant could, in the regular discharge of his duties, be injured by the defect,'' for under the rule hereinbefore given it would establish that the employer was not guilty of negligence in failing to exercise ordinary care to furnish the plaintiff a safe place to work; in short, where the employer exercises his judgment in the selection and maintenance of a safe place to work, and the employee exercises his judgment in working there, if the situation is equally obvious to all of ordinary comprehension, either the employer is negligent and the employee assumes the risk, or the employer is not negligent.  In a somewhat similar case (*Carrigan* v. *Washburn & Moen Mfg. Co.*, 170 Mass. 79, [48 N. E. 1079],) plaintiff fell into a vat containing vitriol.  This vat was in the floor of the room in which plaintiff worked, as was another vat containing water.  Hot wire was dipped into the vitriol vat and then into the water. It was in the evening, and some of the arc lamps had gone out, and the steam rising from the vats with the hot wire dipped into them obscured the light.  The court there said: ''It is evident that he understood the danger which there was of falling into the vats, and he also knew that he might fall into the one containing vitriol.  He appreciated the risk, and must be held, we think, to have assumed it.  If the want of a railing was a defect, it was an obvious one, which he knew and understood, and so with the obscurity, whether it arose from a want of light or from the steam, or both. It is not contended that the vats themselves were defects, or that they could have been used without removing the covers. . . . He knew that they were there, and that there was no railing, and that when the covers were off there was

danger of falling into them; and he continued in the defendant's employment, without any objection on account of the additional risk to which he was subjected by them." In 3 Labatt on Master and Servant (2d ed., p. 3130, note), it is said: "A servant assumes the risk of danger from the floor being slippery where the condition is obvious. (*Omaha Packing Co.* v. *Sanduski,* 155 Fed. 897, [19 L. R. A. (N. S.) 355, 84 C. C. A. 89], [ice formed as necessary result of work done]; *Swift & Co.* v. *Campbell,* 97 Ill. App. 360 [brine on floor in packing plant]; *Steffen* v. *Illinois Steel Co.,* 140 Ill. App. 551 [floor in rolling mill greasy]; *Wilson* v. *Chess & W. Co.,* 117 Ky. 567, [78 S. W. 453], [slippery floor around vat of water]; *Goudie* v. *Foster,* 202 Mass. 226, [88 N. E. 663], [floor in laundry].) A servant assumes the risk of the danger of slipping on the wet and slimy floor of a meat-packing establishment. (*Saversnick* v. *Schwarzchild & S. Co.,* 141 Mo. App. 509, [125 S. W. 1192].) A baggageman assumes the risk of the floor being slippery due to the spilling of a can of oil kept in the car. (*Schultz* v. *Chicago R. I. & P. R. Co.,* 145 Mo. App. 262, [129 S. W. 1051].) An employer is not liable for an injury to a servant resulting from the floor being wet and slippery, if such is its normal condition. (*Murphy* v. *American Rubber Co.,* 159 Mass. 266, [34 N. E. 268].) An employee in a mill assumes the obvious risk of slipping on a wet floor while turning a lever and being thus brought into contact with an uncovered gearing. (*Scharenbroich* v. *St. Cloud Fiber-Ware Co.,* 59 Minn. 116, [60 N. W. 1093].)" In the case at bar plaintiff knew the possibility of slipping upon the wet floor and knew the dangerous contents of the vat of boiling lye. It is evident, we think, under the law of assumption of risk, as is found by the lower court to obtain in Alaska, that under the admitted facts plaintiff must be held to have assumed the risk and is thereby precluded from recovery.

With reference to the method of proving the law of Alaska, it seems to be conceded by the parties that the instruction given by the court was a correct statement of the law. The law of Alaska was to be proved by competent and proper evidence to the satisfaction of the trial judge and by him stated to the jury in its application to the facts of the particular case. If the law was so correctly stated, the appellant cannot complain that the court adopted a wrong method of

reaching a right conclusion. The respondent does not complain. Two decisions of the United States district court of Alaska were read in evidence on the trial, viz.: *Seittn* v. *Alaska Treadwell Gold Mining Co.,* 2 Alaska, 8, 30, and *Allen* v. *Knight's Island Consolidated Copper Co.,* 3 Alaska, 651. A statute of Alaska was also read in evidence (Session Laws of Alaska, 1913, pp. 84, 85). Testimony was also introduced by the defendant showing that there is no statutory law in Alaska with reference to the assumption of risk and fellow-servant rule. The method of proving a law in a foreign state is regulated by sections 1900, 1901, and 1902 of the Code of Civil Procedure. It is there provided, among other things, that "the oral testimony of witnesses skilled therein is admissible as evidence of the unwritten law of a sister state," but the method of using the published reports of decisions is more satisfactory, and where, by the consent of both parties, such reports are offered in evidence, it is not prejudicial error to refuse the testimony of a witness. It being conceded that the conclusion of the court was correct upon the subject of what constituted the law of Alaska, and that the jury were correctly instructed thereon, we are not called upon to pass on the correctness of that decision and do not do so, leaving that question, in the event of a new trial, to be determined by the trial court upon the evidence that may at that time be produced. It is conceded that evidence as to the customary method of maintaining lye vats in other establishments was admissible. It is therefore unnecessary to consider the question whether or not the objections to questions asked on that subject were properly overruled.

Judgment reversed.

Melvin, J., and Victor E. Shaw, J., *pro tem.,* concurred.

Hearing in Bank denied.