## HOLMES v. BRANDENBAUGH, Plaintiff in Error.

### Division One, February 18, 1903.

1. **Negligence: TOOLS: MACHINERY: NEGLIGENT USE.** If the appliance which caused the injury was a safe appliance for the purpose designed, and the accident resulted not because it was not a suitable appliance for the purpose for which it was intended, but because it was improperly handled or applied by the person injured, he can not recover from his master damages for his injury.

2. ——: ——: **ELEVATOR: THROWING BELT.** A belt in a grain elevator was eighteen feet long, and ran from a wheel or drum on a shaft to a spiral screw or auger in a conveyor, and near it was another belt from the same shaft, the two parts of which were coupled together by a knuckle and set-screw. For sometime both belts were stopped by means of lock pulleys, but these getting out of repair, a stick was used to throw the belt from the drum on the auger, which would cause it to stop. To prevent the belt thus thrown from coming in contact with the other belt, a rope was used to tie it to a railing that ran along above the belt. This method had been in use for about eighteen months, when plaintiff threw the belt, and in attempting to tie the rope to the railing was caught by the rope, dragged over to the shaft and his hands injured. He did not know how the rope caught but thought it became entangled around the set-screw in the knuckle around the shaft. The belt at the time was stationary. Plaintiff, who was twenty-nine years old and knew all about the machinery, testified that there was no

danger in using the stick to throw the belt; that he had done it the day before without injury; and the only evidence that it was unsafe was that of the superintendent who gave no reason for his opinion that it was unsafe. The evidence presented no reason that required the plaintiff, in tying up the belt, to get close enough to the shaft for the rope to get entangled with the set-screw, nor was any negligence in not covering the set-screw charged, the only negligence averred being that a belt conveyor which could have been stopped without danger to the operator was not provided. *Held,* that plaintiff was properly nonsuited.

Error to Jackson Circuit Court.—*Hon. James Gibson,* Judge.

REVERSED AND REMANDED *(with directions).*

*Frank P. Sebree* and *John D. Wendorff* for plaintiff in error.

The court rightfully sustained the demurrer to plaintiff's evidence, and committed error in setting aside the nonsuit and granting plaintiff a new trial for the following reasons: (1) Before plaintiff can recover in this case, he must not only show that he was injured but that the injury was caused by the negligence of the defendant, charged in plaintiff's petition. Hudson v. Railroad, 101 Mo. 34; Rutledge v. Railroad, 123 Mo. 136; Breen v. St. Louis Cooperage Co., 50 Mo. App. 212; Norville v. Railroad, 60 Mo. App. 416; Perse v. Railroad, 51 Mo. App. 171; Marshall v. Hay Press Co., 69 Mo. App. 260. (2) The accident was not caused by any defect or want of repair of the machinery or appliances. The only defect in the machinery or appliances complained of in plaintiff's petition was that one of the spiral conveyors, which was thirty or forty feet away from where the accident happened, was out of repair, and it was in no way connected with the machinery which plaintiff was manipulating at the time of the accident. Before plaintiff can recover on account of the defect in the spiral conveyor, he must show, not only that said defect was the proximate cause of the injury, but that defendant knew of the defect in

time to have repaired it and prevented the injury. All of the machinery and appliances where the accident occurred—shaft, pulley, setscrew, rope, etc.,—and all that could in any way have had anything to do with the accident were in perfect repair at the time of the accident. Hudson v. Railroad, 101 Mo. 34; Thompson v. Railroad, 140 Mo. 135; Stanley v. Railroad, 114 Mo. 620; Barclay v. Railroad, 96 Mo. 367; Breen v. St. Louis Cooperage Co., 50 Mo. App. 202; Brown v. Land & Lumber Co., 65 Mo. App. 166; Plefka v. Knapp, Stout & Co., 145 Mo. 316. (3) There was nothing out of repair, hidden or concealed about the machinery and appliances where plaintiff was injured, but everything was in plain view, open and obvious to plaintiff and in perfect repair, and the evidence shows that plaintiff was thoroughly familiar with the machinery, the manner in which he was operating it, and his situation and surroundings at the time of his alleged injury, and he therefore assumed the risk of being injured thereby. Harff v. Green, 168 Mo. 312; Lucy v. Hannibal Oil Co., 129 Mo. 40; Minnier v. Railroad, 167 Mo. 99; Bradley v. Railroad, 138 Mo. 303; Holloran v. Union Iron & F. Co., 133 Mo. 477; Nugent v. Milling Co., 131 Mo. 245; Junior v. Electric Light Co., 127 Mo. 83; Berning v. Medart, 56 Mo. App. 448; Fugler v. Bothe, 117 Mo. 475; Marshall v. Hay Press Co., 69 Mo. App. 260. (4) Defendant was not required to use any particular kind of machinery or appliances, but had the right to conduct his business in his own way, and plaintiff being familiar with the machinery and appliances and knowing the manner in which defendant was conducting his business, assumed the risk of injury thereby. Bradley v. Railroad, 138 Mo. 302; Blanton v. Dold, 109 Mo. 74; Bohn v. Railroad, 106 Mo. 433. (5) It was no part of plaintiff's duty to throw the belt off of the pulleys and tie it up as he was attempting to do at the time of the accident, nor had he ever been directed by any one to do so; but he went outside the scope of his employment and voluntarily undertook to do it, and therefore can not recover. Schaub v. Railroad, 106 Mo. 83.

*Harwood & Meredith* for defendant in error.

(1) The trial court rightfully granted the plaintiff a new trial as it erred in sustaining the demurrer of the defendant to the evidence of the plaintiff and in not submitting the case to the jury; for the evidence clearly showed that the defendant was negligent in the following particulars: (a) In allowing the spiral conveyor to become rusty and out of repair. (b) In not stopping the engine and machinery when the spiral conveyor was to be disconnected from the power running it. (c) In allowing the friction band pulleys with lever attachment to become so out of repair that they had to be thrown away, and in not replacing them with like machinery. (d) In selecting as appliances for the throwing off and tying up of belt, a stick and rope. (2) While the law does not require the master to furnish machinery absolutely safe, yet in selecting it or having it constructed for a particular purpose, he must use ordinary care and foresight and see that it is reasonably safe for the use for which it is provided, and kept in good repair. Steinhauser v. Spraul, 114 Mo. 551; Siela v. Railroad, 82 Mo. 435; Settle v. Railroad, 127 Mo. 336; Wendler v. Peoples' House Furnishing Co., 165 Mo. 536; Epperson v. Postal Tel. Cable Co., 155 Mo. 385; Connolly v. St. Joseph Press Printing Co., 66 S. W. 273. (3) The fact that the plaintiff knew that the appliances furnished him were defective will not charge him with contributory negligence or the assumption of the risk growing out of the use of such machinery, as the appliances were not so dangerous as to threaten immediate injury, and he reasonably supposed that he might safely use them by the exercise of proper care, and whether such was the case under the evidence was a question for the jury. Francis v. Railroad, 127 Mo. 669; Doyle v. M. K. & T. Trust Co., 140 Mo. 19; O'Mellia v. Railroad, 115 Mo. 205; Epperson v. Postal Tel. Cable Co., 155 Mo. 385; Duerst v. St. Louis Stamping Co., 163 Mo. 607; Adams v. McCormick Harvesting Machine Co., 68 S. W. 1055;

Nichol v. Columbia Paper Stock Co., 68 S. W. 955; Prophet v. Kemper, 68 S. W. 956. (4) It was not contributory negligence or an assumption of the risk on the part of the plaintiff in obeying the order of the superintendent when ordered to throw off this belt with the appliances furnished by the defendant, and it did not preclude a recovery on his part unless the danger was so glaring that a man of ordinary prudence would, under the circumstances, have refused to do as he was ordered. Whether or not such was the case, was a question for the jury. Keegan v. Kavanaugh, 62 Mo. 232; Wendler v. Peoples' House Furnishing Co., 165 Mo. 527; Smith v. Coal Co., 75 Mo. App. 183. (5) Where the facts with respect to the negligence of the parties are such that reasonable minds might differ with respect thereto, the case should go to the jury. Pauck v. St. Louis Dressed Beef & P. Co., 159 Mo. 467; s. c. reaffirmed in 166 Mo. 639; Doyle v. M. K. & T. Trust Co., 140 Mo. 15; O'Mellia v. Railroad, 115 Mo. 221; Mahaney v. Railroad, 108 Mo. 191; Hamman v. Cen. Coal and Coke Co., 156 Mo. 232.

MARSHALL, J.—This is an action for five thousand dollars damages for personal injuries, received by the plaintiff, while in the employ of the defendant, in his elevator, in Kansas City.

The plaintiff suffered a nonsuit, which the court afterwards set aside, and from which order the defendant appealed.

The allegations of the petition as to the cause of the injury and the negligence charged are as follows: "That on November 1, 1899, and at all times hereinafter mentioned, the plaintiff was in the employ of and working for said defendant in and about said Crescent Elevator. That on November 1, 1899, he was working on the bin floor of said elevator and the spiral conveyor became disarranged and did not work properly, so that it was necessary to disconnect it with the power from the engine; in order to do this the plaintiff attempted to throw the belt off of the pulleys connecting the said

conveyor with the shafts and belting running to the engine, and to tie up the belt with a rope provided for that purpose, to keep the belt out of reach of the machinery. This work had to be done in a very narrow space just over the shaft, while the shaft was revolving with great speed. While attempting to tie up this belt, the belt or rope being used by the plaintiff was caught by the revolving shaft, or setscrew thereon, and the plaintiff was drawn into the machinery and his hands caught by the revolving shaft and held until the machinery was stopped. That the plaintiff's left hand was torn across the back each time the setscrew revolved and the ends of the fingers on his right hand were mashed off, and the plaintiff was in great danger of losing his life. The plaintiff further alleges that his injury was due to the negligence, carelessness and failure on the part of the defendant to provide proper and safe machinery for the doing of the work assigned to plaintiff and the failure on the part of the defendant to keep said machinery in repair. That the defendant used a spiral conveyor to distribute the wheat in the several bins and allowed the spiral and the machinery running the same to become rusty and out of repair so that it worked with difficulty and frequently caught, necessitating the throwing of the belt off of the pulleys connecting said spiral conveyor with the power running the same; that only a stick was provided with which to throw off the said belt and so confined was the space provided that when the belt was thrown it was necessary to tie up the belt out of the way of the machinery and for this purpose a rope was provided, all of which made said machinery dangerous and difficult to operate. That defendant was negligent in not providing a belt conveyor which could have been stopped without danger to the operator, by means of a lever, and the said defendant was further negligent in not stopping the engine and machinery when said spiral conveyor had to be disconnected, and the defendant was further negligent in not providing a larger space and safer place within which the operator might work while tying up said belt.

The plaintiff further alleges that the defendant received notice prior to the accident and knew that said machinery was defective and unsafe, and the same was unknown to the plaintiff. That the plaintiff was not negligent or careless while doing said work at the time he was injured, but was careful and prudent in the use of said machinery and in the doing of said work. The plaintiff further alleges that at all times herein mentioned he was performing the duties required of him and for which he had been employed by the defendant."

The answer is a general denial, with special pleas of contributory negligence and assumption of risk.

The case made by the plaintiff was this: for over two years before the accident the plaintiff had been in the employ of the defendant. The plaintiff is a nephew of the defendant's wife, and at the time of the accident he was twenty-nine years old. It was the plaintiff's duty to weigh the grain in and out of the elevator, to see that it was put in the proper bin, to look after the machinery on the upper floors and if anything went wrong to shut it off if he could and fix it, and if he could not do so, then to notify Ed. Hunt, the superintendent.

Without entering into a detailed description of the machinery it is enough now to say that the grain is carried to the top of the elevator, and then there are spiral conveyors which carry it to the several bins. A conveyor is a kind of a trough made usually of iron, on the inside of which there is a spiral screw or auger which by revolving carries the grain along the inside of the conveyor. The outside of the conveyor is stationary and has drop flaps over each bin that may be opened so as to permit the grain to fall into the proper bins below. The spiral screw or auger on the inside of the conveyor is operated by means of a belt and pulley, that is, a belt working around a revolving shaft. There were two such conveyors in this elevator, on the east and west sides thereof respectively. Where the two ends of shaft are coupled together, there is a knuckle that goes around the shaft and a setscrew that

fastens the knuckle, which is three-fourths of an inch in diameter and stands up about an inch from the shaft. At first and up to about eighteen months before this accident there were two friction band pulleys on the shaft, one to control each conveyor, and when it was desired to stop the conveyor or rather the spiral screw inside of the conveyor without stopping the shaft, it was only necessary to pull the lever which pulled the pulley out of gear, and permitted the shaft to revolve without revolving the pulley that operated the conveyor, and to start the conveyor again it was only necesary to throw the lever back again. This part of the machinery had gotten out of repair and had been taken out. For about eighteen months before the accident the only method provided for stopping a conveyor without stopping the whole machinery, was a stick or pole and a piece of rope. By means of the stick the belt was shoved off of the drum or wheel on the shaft, and thus left hanging slack around the shaft. To prevent it from coming in contact with the other belt, that operated the other conveyor, and thereby being injured or burnt by the friction of the other rapidly moving belt the rope was used to tie the first-named belt up to a railing that ran above the belt and along the side of the walk on which the person who was attending to the putting of the grain into the proper bins could go to reach and operate the drop flaps aforesaid. The plaintiff saw these appliances every day while he worked at the elevator. It does not appear from the evidence, however, that he ever tried to throw the belt off of the shaft and stop the conveyor until two days before the accident, when the east conveyor got out of fix, and he called down to the superintendent, Hunt, and told him about it and asked him to stop the machinery, and come up and fix it. Hunt told him to throw the belt off from the shaft (this is not technically correct, but expresses the idea well enough), and fix it himself. The plaintiff replied that he could not do it. Hunt answered that he would have to do it; that it was a part of his duty. Thereupon the plaintiff did so, and tied

up the belt and fixed the conveyor, and threw the belt
back again.   To do this he used the stick and the rope
aforesaid.   On the day of the accident Hunt told the
plaintiff that as soon as the grain was put in the bins
he wanted him to throw the belt that operated the west
conveyor  as it was not working right and he (Hunt)
wanted to work on it.   Before the grain was loaded,
however, the plaintiff heard a great noise about the
west conveyor, and supposed the spiral screw on the
inside of the conveyor had fallen down and was work-
ing against the bottom of the conveyor, which would
ruin both the screw and the conveyor.   Without notify-
ing Hunt or asking him to stop the machinery, because
he says he knew Hunt would tell him to do as he had
done two days before on the east conveyor, the plain-
tiff took the stick and threw the belt off of the shaft,
and tied the belt up to railing with the rope.   He
started away and then looked back, and saw that he had
not tied the belt up high enough and that as it was it
would come in contact with the other belt and be ruined.
So he went back and attempted to tie it up.   While so
engaged he was caught by the rope, dragged over the
railing, the railing broken, his hands tied with the rope
and caught between the belt and the shaft and both
hands injured.   He is unable to tell how it happened
or what caused it, but said that he thought the rope be-
came entangled around the setscrew on the revolving
shaft and thus tightened until it drew him into the po-
sition in which he was.   Upon the alarm being given
the machinery was stopped, and when Hunt got to
him he found his hands in the condition above de-
scribed, and the rope wound around the setscrew.
The ends of the rope were spliced so as to make a loop
and not to have any knot that might catch in the ma-
chinery.   The plaintiff offered testimony to show that
such a setscrew in other elevators had a shield around
it to prevent anything becoming entangled in it, and
that this setscrew had no such precautionary device,
but the court excluded the testimony because no negli-
gence in this regard was charged in the petition.   The

plaintiff testified that there was no danger incident to using the stick to throw the belt off of the shaft, because it was a long pole or stick, and the person using it stood at a distance from the machinery; that it was difficult to do this because the belt was tight around the shaft, and it would sometimes break the end of the stick. The superintendent, however, testified that he considered this method of throwing the belt with the stick and tying it up, to be an unsafe method. This opinion was admitted without objection. The superintendent, however, gave no reason whatever for this opinion. He admitted telling the plaintiff two days before that he must throw the belt off of the shaft that operated the east conveyor and fix it himself, but he added that he told him if he could not do so to let him know. There was no evidence tending to support the allegations of the petition that the defendant was negligent in not stopping the engine and machinery when the conveyor was to be disconnected, nor that the space was not large enough for the operator to work while tying up the belt. As to not stopping the machinery, the plaintiff said he did not notify the superintendent or any one else that there was any trouble, nor that he intended to throw the belt, nor did he ask that the machinery be stopped while he was so doing.

Upon this showing the court nonsuited the plaintiff, and afterwards set it aside and granted a new trial, and the defendant appealed.

## I.

The negligence charged in the opinion is that the defendant furnished a stick to throw the belt off the shaft and a rope to tie it up while he should have had a lever attachment for doing this.

That such was the method that had been used for about eighteen months before the accident there is no doubt or conflict in the evidence. The only evidence that was offered, however, that such a method was unsafe, was the opinion of Hunt, the superintendent, and while he gave the opinion, he gave no reason whatever

for the opinion, or why it was unsafe.   It appears that the method had been in use for a year and a half. Hunt knew it; the plaintiff knew it; every one around the elevator knew it.   It also appears that the means and methods so furnished had been used every time the conveyors became choked up with grain or got out of fix; that two days before the accident the plaintiff had successfully used the same means and method for stopping the east conveyor; that no one had ever been hurt by the use of such means and methods before. In fact the method is so simple that it is difficult to see how it could be dangerous or unsafe.   The plaintiff himself says that there can be no danger in using the stick or pole to throw the belt, because the pole is long and the person using it stands a distance away from the machinery.   It is uncontradicted that when the belt is thrown off from the drum or wheel on the shaft that holds it taut and moves the belt as the shaft revolves, the belt still remains around the shaft, but is so loose that the revolving of the shaft does not move the belt. The belt is therefore stationary.   The belt, however, is slack and may rub against the other belt that operates the other conveyor, and the friction may burn or injure it; so, to prevent this the rope was used to tie the stationary belt to the railing along the side of the walk and thereby keep the two belts from coming in contact.   This does not seem at all an intricate or dangerous thing to do.   The manipulation of no machinery is involved in tying a stationary belt to a railing with a rope.   It appears so simple that any one, especially an educated man twenty-nine years old, who had worked in this elevator over two years and had seen this done many times, should be able to do it without any especial trouble or risk.   Why the plaintiff met with any injury on this occasion from attempting to do it, he says he can not explain and doesn't know, unless it was that the rope got tangled with the setscrew on the revolving shaft.   That the rope was so entangled when the machinery was stopped and Hunt got to the plaintiff is shown by the testimony of Hunt.   But how

or why or from what cause the rope got so entangled, nowhere appears from the evidence. The setscrew was on the shaft and projected about an inch above the shaft. The belt that the plaintiff had thrown off from the shaft, was some eighteen feet in length; that is, the evidence shows the conveyor was eighteen feet from the shaft and that the belt communicated the power from the shaft that operated the conveyor, so the belt must have been eighteen feet long. This being true there appears no reason whatever that required the plaintiff, while tying the belt to the railing, to get near enough for the rope to become entangled with the setscrew on the shaft. If he did so and if this was the cause of the accident, the plaintiff was properly nonsuited in this case, both because no right to recover was predicated in the petition upon any negligence in not covering the setscrew with a shield to keep the rope from becoming entangled with it, and also because it was the plaintiff's own negligence that caused the accident; or at any rate, no actionable negligence on the defendant's part has been shown.

The correlative rights and duties of the master and servant are thus defined in Minnier v. Railroad, 167 Mo. l. c. 112:

"1. . It is the duty of the master to furnish to the servant a reasonably safe place and reasonably safe machinery and appliances in which and with which to do the master's work. [Tabler v. Railroad, 93 Mo. 79; Grattis v. Railroad, 153 Mo. 403.] 'It is not the duty of the master to furnish any particular kind of tools, implements or appliances. His duty in this respect is to use ordinary care and diligence in selecting and furnishing safe and suitable tools and implements. No inference of negligence can rise from evidence which shows that the implement was such as is ordinarily used for like purposes by persons engaged in the same kind of business.' This terse statement of the rule was announced by BLACK, J., in Bohn v. Railroad, 106 Mo. l. c. 433. This court, in banc, speaking through SHERWOOD, J., in Steinhauser v. Spraul, 127

Mo. l. c. 562, said: 'It is well-settled law that an employer is not bound to furnish his employees the safest known appliances, tools or machinery, the latest approved patterns of tools and improvements therein, etc., nor does he render himself liable by failing to discard tools or appliances which are not such, and to supply their places with those which are more safe. [2 Thompson on Neg., p. 983; Blanton v. Dold, 109 Mo. 64.]'

"The servant in entering the service of the master assumes the risks that ordinarily and usually are incident to the business being conducted by the master, and his wages include compensation for injuries received from such risks. In Bradley v. Railroad, 138 Mo. l. c. 302, this court, per MACFARLANE, J., said: 'It is equally well settled that a master can conduct his business in his own way, and the servant, knowing the hazards of his employment as the business is conducted, impliedly waives the right to compensation for injuries resulting from causes incident thereto, though a different method of conducting the business would have been less dangerous.' To the same effect is Jackson v. Railroad, 104 Mo. 448.

"It is also the law, not only in this State but almost universally, that if the master fails in his duty to his servant to furnish safe appliances, and if the servant knows, or by the exercise of ordinary care could know, that the appliances furnished are not altogether or reasonably safe, the servant is not obliged to refuse to use the appliances or quit the service of the master if he reasonably believes that by the exercise of proper care and caution he can safely use the appliances notwithstanding they are not so reasonably safe, and if he does use them and exercises such care and caution and is injured, the servant does not waive his right to compensation for injuries received in consequence, nor is he guilty of contributory negligence. But if the appliance is obviously so dangerous that it can not be safely used even with care or caution, or as it is sometimes said, if the danger of using it is patent, or such as to threaten

immediate injury, then the servant is guilty of contributory negligence if he uses it, and the master is not liable notwithstanding his prior failure of duty. [Huhn v. Railroad, 92 Mo. 447; Soeder v. Railroad, 100 Mo. l. c. 681; Holloran v. Iron Co., 133 Mo. l. c. 476.]''

Whilst it is true that mere knowledge on the part of a servant of the defective machinery or improper appliance will not bar a right of action or require the servant to quit the service if the danger does not threaten immediate injury and if the servant reasonably supposed the machinery or appliance could be used by the exercise of ordinary care (Francis v. Railroad, 127 Mo. 669; Pauck v. Beef Co., 166 Mo. 639), and whilst it is true that if the facts of any case are such that if reasonable men may fairly differ as to whether there was or was not negligence, the case is one for the jury (O'Mellia v. Railroad, 115 Mo. 221; Hamman v. Coal Co., 156 Mo. 232), still these rules of law do not control the decision in this case, because the case made for the plaintiff does not bring him within these rules. The plaintiff himself says there could be no danger from using the stick to throw the belt off of the shaft. It is too clear to admit of a difference of opinion among reasonable men that it is not negligence on the master's part to furnish the servant with a rope to tie the stationary belt to the railing so as to prevent its rubbing against the moving belt, and to require him to do so. The rope was a safe appliance for such a purpose. That the appliance could be safely so used without risk or danger of injury, is not only demonstrated by the fact that it had been so used many times for a year and a half, and by the fact that the plaintiff had so used it two days before on the west belt, but it is also a plain, obvious physical fact, that no man of ordinary intelligence could be found to deny. So that, if the rope on this occasion caused the accident, it was not because the rope was not a suitable appliance for the purpose it was intended for, but because the rope was improperly handled or applied by the plaintiff himself. [King v. Morgan, 109 Fed. l. c. 448.] And this being true the court properly

nonsuited the plaintiff, and erred in afterwards setting it aside, and its judgment is reversed and the cause remanded with directions to set aside the order setting aside the nonsuit.  All concur.