PAT HARRINGTON, Respondent, v. WABASH
RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 1, 1904.

1. **MASTER AND SERVANT: Safe Appliances: Ordinary Care:
Negligence.** While a master should furnish reasonably safe
appliances for the servant's work, he is not an insurer and is
not required to furnish any particular kind of appliances, but
merely to use ordinary care in selecting suitable appliances;
and no inference of negligence can arise from the use of tools
such as are ordinarily used for like purposes by persons en-
gaged in the same sort of business.

2. ——: **Assumption of Risk: Method of Business.** The ser-
vant assumes the risks that are usually incident to the busi-
ness, and the master may conduct his business in his own way;
and where there is no negligence in the safety of the place or
the appliances, the master is not liable for injuries to the ser-
vant.

3. ——: ——: **Servant's Experience: Waiver.** Where the
servant knows the risks and hazards ordinarily incident to the
master's business as conducted, he assumes such risks and
waives his right to compensation for injuries.

4. ——: **Contributory Negligence: Evidence: Accident.** On a
review of the evidence it is held, that the injury complained of
by the plaintiff was the result of his own fault or an unfore-
seen casualty, and in neither event is the master liable.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale*, Judge.

REVERSED.

*Geo. S. Grover, Frank P. Sebree* and *H. C. McDougal* for appellant.

(1) The court erred in overruling defendant's demurrer to the evidence and in giving plaintiff's instructions 1 and 3. Neither allegation nor proof warranted plaintiff's first instruction. Plaintiff's opportunity to know of the risk and danger is as strong as actual knowledge thereof, and bars a recovery. 4 Am. and Eng. Ency. of Law, 29-30; Beach, Contrib. Neg., sec. 139; Greenleaf v. Railway, 29 Iowa 46; Perigo v. Railway, 52 Iowa 276; Cummings v. Collins, 61 Mo. 520; Keenan v. Kavenaugh, 62 Mo. 232; Siela v. Railway, 82 Mo. 430; Roddy v. Railway, 104 Mo. 231, 250-1; Haley v. Jump, etc., Co. (Wis.), 51 N. W. 321; Carpenter v. Railway, 39 Fed. 315; Railway v. Herbert, 116 U. S. 642. (2) He can not close his eyes to such danger; and the same degree of ordinary prudence rests upon him as rests upon the master. Wormell v. Railway (Me.), 31 A. and E. Cas. 272, 276; Railway v. Mahoney, 4 Ill. App. 265, and cas. cit.; 2 Thomp., Neg., 1008; Bogenschutz v. Smith, 84 Ky. 330, 338; authorities below cited. (3) Plaintiff's injury was the result of his contributory negligence. This court should review "the whole evidence no matter by whom offered." Klokenbrink v. Railway, 172 Mo. 678, 683; see also authorities hereinafter cited. (4) Plaintiff's injury resulted from one of the risks of his employment and that risk he assumed. Holmes v. Brandenbaugh, 172 Mo. 53; Haviland v. Railway, 172 Mo. 106, 112; Holloran v. Iron Co., 133 Mo. 470; Nugent v. Milling Co., 131 Mo. 241; Bohn v. Railway, 106 Mo.

429, 434; Fugler v. Booth, 117 Mo. 475; Steinhauser v. Spraul, 127 Mo. 541; Marshall v. Hay Press Co., 69 Mo. App. 256; Cunningham v. Journal Co., 95 Mo. App. 541; Judge Seymour D. Thompson in 56 Cent. Law Jour., 323, and cas. cit., notes; Beckam v. Brewing Co., 98 Mo. App. 555; s. c., 72 S. W. 710. (5) Even if it had been safer, or less dangerous, to transfer the cylinders on the transfer table than to carry them across the pit, that would be no evidence of negligence for the reason that the master is under no obligation to furnish to the servant the safest, or least dangerous, manner, appliance, machinery, or the like, in the conduct and management of his business. Muirhead v. Railway, 19 Mo. App. 634; Conway v. Railway, 24 Mo. App. 235; Cathorn v. Cudahy P. Co., 73 S. W. 279; Smith v. Railway, 69 Mo. 37; Bradley v. Railway, 138 Mo. 293; Minnier v. Railway, 167 Mo. 99; Holmes v. Brandenbaugh, 172 Mo. 53.

*Hollis & Fidler* for respondent.

(1) This cause was properly submitted to the jury and the verdict and judgment thereon fully supported by the evidence. Halliburton v. Railroad, 58 Mo. App. 27; Kane v. Falk Co., 93 Mo. App. 209; Monahan v. Coal Co., 58 Mo. App. 68; Beard v. Car Co., 72 Mo. App. 583; Devore v. Railway, 86 Mo. App. 429; Reed v. Railroad, 94 Mo. App. 371; Foster v. Railway, 115 Mo. 165; Huhn v. Railway, 92 Mo. 440. (2) The court in such case will not interfere with the province of the jury and will affirm the judgment, when the jury are properly instructed. Black v. Railway, 172 Mo. 177; Minnier v. Railroad, 167 Mo. 99; Union Mill Co. v. Bruihl, 51 Mo. 144; Moore v. Pieper, 51 Mo. 157; Covey v. Railway, 86 Mo. 635; Smith v. Railway, 119 Mo. 246; Franke v. St. Louis, 110 Mo. 516; State ex rel. v. Hope, 121 Mo. 41; Church v. Railroad, 119 Mo. 214; Lynch v.

Railway, 112 Mo. 420; Gratiot v. Railroad, 116 Mo. 450. (3) Negligence consists in doing something which a reasonably prudent man would not have done under the circumstances, or in failing to do something which a reasonably prudent man under the circumstances would have done. McMahon v. Pacific Express Co., 132 Mo. 641. There is no absolute rule as to negligence to cover all cases.

SMITH, P. J.—Action to recover damages for personal injuries. The plaintiff in his petition amongst other things alleged, that the defendant operated machine and car shops at Moberly in said State, for the repair of its cars and all parts thereof, including cast-iron cylinders for placing under its cars for air or steam brakes used on its said cars in the operation of its road, said cylinders being about three to four feet long and weighing two hundred pounds or more. That among said shops so maintained by defendant in the operation of its road was a paint shop, foundry and car shop, situated about 300 feet apart. Between said shops was a pit about seventy feet wide and about fifteen to eighteen inches below the surface of the ground, with railroad tracks laid therein lengthwise and close to each edge of said pit. That defendant had for the purpose of conveying castings and other articles across said pit from one shop to the other a transfer table which was moved up and down said pit by means of a crank, on the track laid therein, to any point where the same was needed. The top of said table was on a level with the surface of the ground on each side of said pit between the said shops, and said articles were transferred on trucks across said table, all of which could be done with reasonable safety in such manner.

Plaintiff was in the employ of defendant working in its said shops as a laborer in the repair of cars and of car trucks for and in the operation of its road. That at the date aforesaid plaintiff, with two other

workmen, was ordered by defendant's foreman in charge of said work and over said workmen, to carry some of the aforesaid cylinders from one of said shops to the other, across said pit and tracks laid therein, and was negligently and carelessly ordered to carry the same over on a stick, instead of using the table provided for such purpose. That in obedience to said order of said foreman, plaintiff, with his colaborers, attempted to carry one of said cylinders across said pit, by said colaborers placing a stick under the cylinder, which said cylinder was of cast iron with a very smooth surface on the outside and of a round form. Plaintiff was holding the back end of said cylinder. The cylinder was tapering from one end to the other, the large end being in front and plaintiff holding the rear or smaller end endeavoring to balance said cylinder on said stick, which by great exertion and care he succeeded in doing from one edge of the pit down, into and across said pit and tracks therein, until his said colaborers stepped across the railroad tracks at the far edge of said pit and up out of said pit to the ground level, when, by reason of the raise caused by said colaborers stepping up onto said ground level it became impossible for plaintiff to keep said cylinder on an exact balance on account of said abrupt step-up and said railroad tracks close to said bank, and the unequalled height of said colaborers holding the front end of said cylinder on said stick, and by reason of the smoothness of said stick and cylinder, it rolled, tilted and slipped on said stick and fell back onto plaintiff, greatly injuring him.

The answer contained a general denial to which was added the plea of contributory negligence and the assumption of the risk.

The evidence tended to show that the defendant's car, repair and paint shops were about 200 feet apart and fronted each other north and south and that between them there was what is called a pit in which was operated a transfer table or portable bridge over which cars

and heavy materials were transferred from one shop to the other. The pit was about thirteen inches deep and sixty feet wide. On the morning that the plaintiff was hurt there were two cylinders in the car shop which Lang, the foreman of the two shops, wanted removed to the paint shops, and he accordingly ordered Cosby and Mitchell, two of his employees, to do this. The cylinders were truncated cones—churn shaped and about four feet long and twelve inches in diamater at the larger end and nine inches at the smaller. They weighed about 200 pounds each and were a part of the air brake system in use on defendant's railway trains. When Cosby and Mitchell came to remove the cylinders the latter suggested to the foreman that they were rather heavy for two men to carry across the pit and thereupon the foreman told them to go and get plaintiff who was at work in the car shop. Mitchell notified plaintiff to come over and help them which the latter accordingly did. The foreman directed them to use a stick or handspike in carrying the cylinders. A stick was procured which was about six feet long and 2x2 inches, one side of which was quite smooth. The cylinder had a smooth cast-iron outer surface. The stick was put under the cylinder, Cosby taking hold of one end and Mitchell the other. The plaintiff took hold of the rear and smaller end so as to keep it *in equilibrio* on the stick while being carried. The first cylinder was removed and when the men returned to get the other and had placed the stick under it, the foreman directed that it—the stick— be placed a little further forward so that more of the "heft" would be on the plaintiff in holding up the rear end. When the three men had carried it across the pit and Cosby and Mitchell had stepped upon the level ground the cylinder tilted up the smaller end descending to the sill which is the outer edge of the pit whereby the plaintiff's three fingers were caught and injured. Whether this was caused by the plaintiff slipping or stumbling or by the cylinder turning or slipping on the

stick so that plaintiff lost control of his end of it is not clear from the evidence. The plaintiff went down with his end but just how it happened that he did so is somewhat conjectural. The plaintiff testified that Cosby and Mitchell were of *unequalled height* and that when they stepped from the bottom of the pit upon the higher ground the cylinder turned on the stick and came right down "before he knew where he was." Cosby testified that plaintiff mostly held the cylinder in balance, and that was what it was aimed for him to do; that the hind end went down before it rolled; that after that end went down it rolled over toward Mitchell. He further testified that he could not tell whether it slipped and fell or fell suddenly; that as the cylinder fell he looked behind and that the plaintiff was in a kind of stooping position and had hold of his end and jumped to let loose. The witness could not testify whether plaintiff was getting up or not, or whether he was down or not. Mitchell testified that they had stepped out of the pit before the smaller end of the cylinder fell; that when the rear end went down it rolled some toward him but the front end held on the stick. This witness in telling how the accident happened said, that he could not say "only that Paddy (plaintiff) slipped or something or stumbled on the rail pulling the cylinder down." He further testified that his back was to plaintiff and that he would not say plaintiff slipped or stumbled. Whelan, a witness for plaintiff, testified that during the time he had been in the employment of the defendant that he had helped carry two cylinders across the pit in pretty much the same way as the one was carried when plaintiff was hurt. Worledge, another car repairer who was a witness for plaintiff, testified that he had helped carry two or three cylinders across the pit in about the same way as that was carried by plaintiff and the two others, and that it had been the usage during the ten years he had worked for defendant for one, two and three men to carry cylinders and other articles across the pit from

one shop to the other. Lang who was the foreman of the repair shops testified that he had often seen three men carry cylinders and other material across the pit, and that this was one of the ways of transferring them across the pit, and that this was a safe way of carrying them over.

The question raised by the appeal is, whether or not on the evidence as we have just stated it to be, the plaintiff was entitled to a submission of the case to the jury?

The common law enjoins upon the master the duty to furnish to the servant a reasonably safe place and reasonably safe machinery, tools and appliances in which and with which to do the master's work. Holmes v. Brandenbaugh, 172 Mo. 1. c. 64; Tabler v. Railway, 93 Mo. 79; Grattis v. Railway, 153 Mo. 403. This duty, however, does not make the master an insurer of the servant. Grattis v. Railway, supra. It is not the duty of the master to furnish any particular kind of machinery, tools or appliances. His duty in this respect is to use ordinary care and diligence in selecting and furnishing such as are safe and suitable. No inference of negligence can arise from evidence which shows that the implement or appliance was such as is ordinarily used for like purposes by persons engaged in the same sort of business. Bohn v. Railway, 106 Mo. 433. Nor is the master required to furnish the servant the safest known appliances, tools or machinery, nor the latest approved patterns of the same. Holmes v. Brandenbaugh, supra. The servant when he enters service of the master assumes the risks that are usually incident to the business being conducted by the master and his wages include compensation for injuries received from such risks. A master may conduct his business in his own way and the servant knowing the hazards of his employment as the business is conducted inpliedly waives the right to compensation for injuries resulting from causes, incident thereto, though a different method of

conducting the business would have been less danger-
ous. Bradley v. Railway, 138 Mo. l. c. 302. There was
no evidence adduced which tended to prove that the
plaintiff's injury was occasioned by the negligence of
the defendant, either in furnishing the plaintiff a rea-
sonably safe place or reasonably safe tools or appliances
in which and with which to do the work required of him.
There was no evidence showing that the number of men
or the hand stick furnished to carry the cylinder were in-
sufficient or unsuitable; or, if there had been no such
negligence is alleged in the petition. The way which the
defendant required the cylinders to be carried was one
of the several ways or methods practiced and used by
defendant in the romoval of cylinders and other mater-
ial from one shop to another. It is perhaps true that it
would have been a safer way to carry the cylinders on
the transfer table than in the way they were carried,
still, as the latter was a reasonably safe way the defend-
ant was not guilty of negligence for not adopting the
former. Smith v. Railway, 69 Mo. 37; Muirhead v.
Railway, 19 Mo. App. 634; Conway v. Railway, 24 Mo.
App. 235; Cothorn v. Packing Co., 73 S. W. 279;
Bradley v. Railway, 138 Mo. 293; Minnier v. Railway,
167 Mo. 99; Holmes v. Brandenbaugh, 172 Mo. 53.

The plaintiff had been in the employment of the
defendant for more than thirty years and during that
time he had engaged in many kinds of work for the de-
fendant. He had been section foreman, track repairer,
car inspector, truck repairer, etc. He was a man of
varied and wide experience and perfectly familiar with
the defendant's manner and way of carrying on its bus-
iness at its shops where he was injured. At the time of
such injury he was employed as a truck repairer and to
do such jobs as he was ordered by the foreman. He knew
the risks and hazards that were ordinarily incident to
the defendant's business as conducted by it, and no rea-
son is seen why he should not be held to have as-
sumed such hazards and risks and to have impliedly,

waived his rights to compensation for the injuries that he might receive from the same. If this rule has no application to this case then it is difficult to conceive of one to which it does apply.

Turning again to the consideration of the evidence it will be seen that it does not very clearly show how the injury happened. It appears that as Cosby and Mitchell, who had hold of the stick, were carefully walking along and had stepped from the bottom of the pit to the ground above, that the hind end of the cylinder went down. The weight of the cylinder was quite equally balanced on the stick, leaving little or no weight to be carried by the plaintiff. He was only required to keep it *in equilibrio*. If the front end was carried to a greater elevation by the stepping of Cosby and Mitchell out of the pit upon the surface of the ground above it would have been an easy matter for plaintiff who was still in the pit to have correspondingly elevated the hind end and thus have maintained the balance; but this, it appears, he neglected to do and the consequence was that the "heft" of the cylinder was shifted from the stick to the hind end, and this, no doubt, was the cause of that end descending to the sill and catching his fingers.

It is impossible to see how the hind end of the cylinder could have gone down while in the hands of the plaintiff, as it undoubtedly did, unless the plaintiff had neglected the duty he was required to perform in respect to keeping its balance on the stick. If he had been on the alert and had given proper attention to the work in hand we can not see how the hind end would have "suddenly gone down," even if the upper face of the stick on which the cylinder was balanced was somewhat smooth. If the hind end had been depressed or elevated as the cylinder was carried along accordingly as was necessary to keep it balanced on the stick the accident would have been averted. The cylinder could not, under such conditions, have slipped or tilted so as to

throw the "heft" on the plaintiff. Such accident was caused not from the unsuitableness or unfitness of the stick for the use to which it was put nor from that of the kind of men used in carrying the cylinder, nor from the unsafety of the way it was ordered to be carried, but, rather, from the negligence of the plaintiff himself. If the cause of the plaintiff's injury can, as we think is the case, be imputed to the fault of anyone, it must be to that of the plaintiff himself, and for such the law gives him no redress. It may be that the plaintiff was not guilty of any negligence or carelessness in handling the cylinder, and that a misstep, slip or stumble of the foot or something of the kind caused him to cast his weight on the hind end of the cylinder and in that way he was disabled from keeping it in balance on the stick, in consequence of which the fore end tilted up and the hind end down, thereby causing the injury. If the injury did not result from the fault or negligence of the plaintiff but from an unforeseen casualty, as we think may fairly be inferred from all the evidence, the result would be the same: that is to say, there would be no liability in either case.

In view of the entire evidence we think we are justified in concluding that on either or all of the grounds stated by us the plaintiff's case must fail and that the court erred in denying defendant's demurrer. Accordingly the judgment will be reversed. All concur.