## FRANK SAVERSNICK, Respondent, v. SCHWARZ-SCHILD & SULZBERGER CO., Appellant.

### Kansas City Court of Appeals, February 21, 1910.

1. **MASTER AND SERVANT.** A master is not guilty of negligence whose plan and manner of doing the particular work is the usual and ordinary way commonly adopted by those in the same business.

2. ————: **Assumption of Risk.** A master has a right to conduct his business in his own way and according to his own methods, and a servant who knows the hazards of· that way and engages in the service, assumes the risk.

3. ————: ————: **Safe Place.** The phrase "a reasonably safe place to work" is a relative term and in determining whether a place is safe, the nature of the place and character of the work should be considered.

4. ————: ————: ————. Where one engages to work in a department of a. meat packing establishment where the waste product of animals is prepared for marketable commodities, in which the floor of the room is necessarily covered with water and slime and is thereby made slippery, and upon which he has several times slipped; and which was shown to be the mode of doing such work by all prudent persons engaged in the same business: *Held,* that defendant was not guilty of negligence and that plaintiff assumed the risk of danger, and that he could not recover for falling against a part of the machinery.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield,* Judge.

REVERSED.

*Lathrop, Morrow, Fox & Moore* for appellant.

(1) The conditions which caused the accident. were conditions that arose as a necessary incident to the operation of defendant's casing room and the machines therein, and there was no negligence on defendant's part. Brands v. Car Co., 213 Mo. 707; Bohn v.

Railroad, 106 Mo. 439; Steinhauser v. Spraul, 127 Mo.
562; Chrismer v. Telephone Co., 194 Mo. 189; Harring-
ton v. Railroad, 104 Mo. App. 670.   (2)  The wet and
slippery floor in the vicinity of his machine (the opera-
tion of the machine necessarily made the floor wet, and
slippery) involved a risk which the plaintiff assumed
when he entered defendant's employ.  Blundell v. Man-
ufacturing Co., 189 Mo. 558; Harrington v. Railroad,
104 Mo. App. 670; Bradley v. Railroad, 138 Mo. 302;
Wendall v. Railroad, 100 Mo. App. 561.

*Boyle & Howell* and *D. C. Simrall* for respondent.

(1)  Under the pleadings and the evidence in the
case respondent was entitled to recover, and the court
did not err in overruling appellant's demurrer to the
evidence and in refusng appellant's motion in the na-
ture of demurrer to the evidence.  Clippard v. Transit
Co., 202 Mo. 432; Barth v. Railroad, 142 Mo. 555; Heb-
erling v. Warrensburg, 204 Mo. 618; Dougherty v. Rail-
road, 128 Mo. 33; Hamman v. Central, etc., Co., 156
Mo. 232.   (2)  It was the duty of appellant to furnish
respondent a reasonably safe place in which to work,
and its failure to so do was negligence on its part which
respondent did not assume when he entered appellant's
employ.  Clippard v. Transit Co., 202 Mo. 432; Curtis
v. McNair, 173 Mo. 270, 280; Williams v. Railroad, 119
Mo. 316; Rodney v. Railroad, 127 Mo. 676; Herdler v.
Buck's Co., 136 Mo. 3; Blanton v. Dodd, 109 Mo. 64;
Little v. Railroad, 127 Mo. 336; Pauck v. Dressed Beef
Co., 159 Mo. 467; Wendler v. Peoples, etc., Co., 165 Mo.
527; Cole v. Transit Co., 183 Mo. 81, 94; Butz v. Murch,
190 Mo. 279, 286; Charlton v. St. L., etc., Co., 200 Mo.
433; Lee v. St. L., etc., Co., 112 Mo. 388; Harrod v. Ham-
mond, etc., Co., 125 Mo. App. 357, 366; Zongker v. Peo-
ples, etc., Co., 110 Mo. App. 382, 388; Kirby v. Manu-
facturers, etc., Co., 127 Mo. 588.

ELLISON, J.—Defendant operates a meat packing house in the State of Kansas and plaintiff was one of its employees. He was injured while engaged in his work and brought this action for damages, alleging that the cause of his injury was defendant's negligence. He prevailed in the trial court.

Plaintiff was working in what is known as the "casing room" of defendant's plant. In this room the heads, horns, hoofs and entrails of the slaughtered animals are treated and prepared for further use as marketable products. These various portions of the slaughtered animals are dropped from the killing beds directly into the casing room by means of chutes and are received in the casing room either in vats of running water or upon tables over which the water is constantly flowing. The nature of the work done in the casing room requires the abundant use of hot water throughout the room. The water getting upon the floor would drain off.

At the time plaintiff was injured, he was operating what is known as a "sliming machine." It consist of a pair of rapidly revolving metallic brushes. A water spray plays over the brushes. The purpose of the machine is to remove the slime from intestines which are passed through it after they have been turned inside out. The slime and foreign matter in this way are detached from the intestines. The spray serves the purpose of washing the intestines and brushes. The slime and foreign matter is caught in a receptacle beneath the machine. There are several of these machines in the casing room and close by each of them is a little tank or receptacle in which the intestines are placed before they are run through the machines. Each of these tanks is also full of running water, the flow of which is controlled by the operator of the machine. Sometimes it overflowed onto the floor. The result from these various operations is that the floor of this room was constantly wet and covered with more or less wa-

ter making its way from the vats, water tables, tanks and machines, to the sewers. The impossibility or impracticability of handling large quantities of parts of animals commonly called "wastage" without the ·use of abundant water, was made apparent. The floor of this room was cleared every day about five o'clock and the accident happened a few minutes before that time. The plaintiff had worked in this particular room for several months and at this particular machine for several weeks before the accident, and himself stated the floor was always slippery and covered with slimy or greasy water. There was nothing shown to be wrong or out of order with the machine, or that it should have been protected. But, on the day he was hurt, his foot slipped and as he fell forward his hand went into the brushes, causing severe injury.

To establish a rule which would sustain this judgment would go a great way towards shutting down all business where danger accompanies the labor required to carry it on. In operating this department of defendant's service it was as inevitable that there would be a wet and slippery floor as that there were offensive odors. Undoubtedly it is the duty of the master to furnish the servant with a reasonably safe place to work. But safe place to work, as thus used, is a relative term; and the word "reasonably" cuts an important figure. Safety of the place is judged by the nature of the work. Some work is necessarily not safe and in such cases the master can only furnish a place as safe as reasonably practicable, considering the character of the service to be performed. Masters are liable for the consequences "of negligence, not of danger." [Brands v. St. Louis Car Co., 213 Mo. 698.] It was shown that the mode and manner of having the work done in which plaintiff was engaged was that usually adopted by persons operating like departments. On this head it was said in the case just cited, that "No man is held by the law to a higher degree of skill than

the fair average of his professon or trade, and the standard of due care is the conduct of the average prudent man.  The test of negligence in employers is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way for which liability shall be imposed."  The evidence affords no ground whatever upon which the charge of negligence can be sustained.

Whatever danger there was, was necessarily contemplated by the plaintiff when he engaged in the service.  There was risk inherent in the nature of the work, and he assumed it.  [Kleinest v. Kimhardt, 160 Mass. 230.]  The floors were slippery and he knew it.  They could not have been otherwise within the nature of the work and the manner of operating the department. That there was danger of slipping he knew, for in his work he stated that he had frequently slipped.  It is a frequent, as well as correct, statement of the law that the servant does not assume the risk of the master's negligence.  [Curtis v. McNair, 173 Mo. 270.]  But it must be remembered that where, as here, there are no hidden agencies or unknown conditions, it is not negligence to put a servant to perform work on the master's plan, which is known to the servant.  "A master can conduct his business in his own way and the servant knowing the hazards of his employment as the business is conducted, impliedly waives the right to compensation for injuries resulting from causes incident thereto, though a different method of conducting the business would have been less dangerous."  [Bradley v. Railroad, 138 Mo. 293, 302; Blundell v. Mfg. Co., 189 Mo. 552, 558; Harrington v. Railroad, 104 Mo. App. 663.]

The demurrer to the plaintiff's evidence should have been sustained and judgment entered for defendant.  The judgment rendered is reversed.  All concur.