MANFORD D. ROBINSON, Respondent, v. HAM-MOND PACKING CO., Appellant.

Kansas City Court of Appeals, November 23, 1914.

1. NEGLIGENCE: Assumption of Risk: Knowledge of Danger: Evidence. Plaintiff, while engaged in the hog killing room of defendant's packing plant, slipped on the greasy floor and his foot went into 'a sewer therein full of scalding water. The greasy floor was a necessary incident of the work. The negligence charged was the maintenance of the slippery floor and the failure to cover the sewer. There was no negligence charged in having hot water in the sewer. The implication from the allegations of the petition was that hot water there was also an incident of the work. Plaintiff knew that the sewer was unprotected and the extent of such lack of protection. His

evidence showed, however, that he had no knowledge that hot water was ever in the sewer, his experience being that it was merely warm and pleasant. *Held*, that if he knew there was likely to be hot water in the sewer he assumed the risk, but if he had no notice thereof he did not assume it, since he had no knowledge of the danger.

2. ———: ———. A servant assumed the ordinary risks inherent in the nature of the business upon which he enters so far as they, at the time of entering the business, are known or should be readily discernible by a person of his age and capacity, in the exercise of ordinary care. And where a business is obviously dangerous and is conducted in a manner which is fully known to the servant at the outset, he assumes the risk of its conduct in that manner although safer methods could have been adopted.

3. ———: ———: **Question of Fact: Jury.** Whenever assumption of risk rests upon a disputed question of fact, then it becomes a mixed question of law and fact and must be left to the jury under proper instructions.

4. ———: ———: **Evidence: Variance: Instruction.** Plaintiff charged that he fell into an unprotected sewer at the unprotected north end. There was evidence tending to show that he stepped into the sewer at the south end where it was protected but which protection was removed at the time to clean the sewer. Defendant asked an instruction to the effect that if plaintiff stepped in the sewer at the south end he could not recover. This was refused. As the petition did not allege negligence in having hot water in the sewer, the place where he went into the sewer cannot be said to be immaterial. The refusal of the instruction was, therefore, error.

Appeal from Buchanan Circuit Court.—*Hon. C. H. Mayer*, Judge.

REVERSED AND REMANDED.

*Samuel J. Motter* and *O. E. Shultz* for appellant.

(1) The master may conduct his business in his own way and the servant must assume all risks incident to the nature of his employment. Disano v. Steam Brick Co., 40 Atl. 7; Mathis v. Stock Yards Co., 185 Mo. 434; Sinberg v. The Falk Co., 98 Mo. App. 546; Bradley v. Railroad, 138 Mo. 302; Roberts v. Tel. Co.,

166 Mo. 376; Gleeson v. Excelsior Mfg. Co., 94 Mo. 201; Musick v. Dold Pkg. Co., 58 Mo. App. 322.   (2) The court committed error in refusing defendant's instruction number 9.   This instruction told the jury that plaintiff assumed all risks incident to his work which he as a reasonably prudent person could or might have observed and that if by reasonable care on his part he could have known that by reason of such work he might receive injuries complained of, then he could not recover.   Thein v. Brecht Butchers' Supply Co., 116 Mo. App. 8.

*Goldman & Liberman* and *Broaddus & Crow* for respondent.

(1) The petition in this case charged either directly or by necessary inference that plaintiff's injuries were due to absence of covers or guards of the drain or sewer containing boiling hot water in which plaintiff was permitted to fall by the slippery condition of the floor and is not subject to appellant's objections after verdict.   Wyler v. Ratican, 150 Mo. App. 474; Johnson v. Springfield I. & R. Company, 143 Mo. App. 441; Brown Construction Company v. McArthur Brothers, 236 Mo. 41; Henry v. Boiler Works Company, 151 Mo. App. 501, 140 S. W. 1195.   (2) We concede the rule to be that the servant assumes the risks ordinarily incident to the performance of his duties for the master.   The master, however, is liable to the servant for injuries caused by the master's negligence. Bliessner v. Distilling Company, 174 Mo. App. 139.

TRIMBLE, J.—Plaintiff was employed in the "hog-killing" room of defendant's packing house.   In the floor was a drain or sewer about nine inches wide and eight inches deep.   It ran the entire length of the room (about seventy-five feet) from north to south and was used to carry the water, grease, scum, blood

and filth which necessarily fell upon the floor in the prosecution of the work. An overflow pipe from the plant's hot water tank connected with this sewer at the south end and hot water ran through the sewer to cleanse the same and to better cut the grease therein. It was also an outlet for the hot and cold water alternately used in cleaning the floor.

The floor of this room, where hogs were killed, scalded, cleaned and dressed, would necessarily become wet, greasy, and slippery during the prosecution of the work. On the 16th of December, 1912, about six o'clock in the evening plaintiff, while performing certain duties required of him in cleaning up after the day's killing had stopped, slipped on said floor and his left foot went into the scalding water in the sewer and injured it. He brought this suit to recover damages.

The petition alleged that the north end of the sewer, filled with scalding water, was uncovered and unprotected for a distance of sixteen feet. The negligence charged was that the defendant "carelessly and negligently permitted the floor of the said hog killing room to become covered with oily and greasy substances, so that plaintiff, while engaged in his usual course of employment and exercising due care for his safety, was caused to slip and fall at a point on the above-mentioned floor, near the sewer, and was made to fall into the said sewer, which was filled with scalding hot water, and was uncovered at that point;" that defendant "knew or should have known that the sewer, into which plaintiff fell, was full of scalding hot water; and that the floor in the said hog killing room was slippery and a dangerous place to work, on account of the oily and greasy substances on said floor; and that plaintiff or any other employee would be apt to fall on said floor, and would be apt to fall in said sewer, yet the defendants negligently and carelessly failed to provide said sewer with a cover, keep it covered and to protect it."

It is clear, therefore, that the negligence charged in the petition was not in permitting scalding water to be in the sewer but in failing to provide the sewer with a cover and in failing to keep it covered and protected while maintaining it full of hot water in a slippery floor. In other words, the petition alleges that defendant did not perform its duty of furnishing plaintiff with a reasonably safe place to work in that it negligently failed to cover the sewer.

The answer was a general denial coupled with a plea of contributory negligence and, assumption of risk.

There is no dispute over the fact that during the day while the work of killing and cleaning is going on the greater portion of the sewer, (including that where plaintiff performed his duties of hoisting to the platform hogs that have rolled therefrom to the floor), was covered with a board fitted thereon. But plaintiff claims that at the north end of the sewer, for a distance of from five to eight feet, there was no covering and never had been any. And that in walking north alongside the sewer and on the west side thereof he came to this unprotected portion of the sewer and while passing around a pile of apparatus at the foot of a post he stepped nearer the sewer and his feet slipped on the greasy, wet floor and his left foot went into the sewer. Although it was after killing had ceased for the day, and the men were engaged in cleaning the room, plaintiff says they had not yet raised the cover which was maintained over the sewer at all points except the few feet at the unprotected north end. Defendant claims, and offered testimony tending to prove, that it was necessary to take the cover off in order to clean the floor, that the cover was off and the men were engaged in cleansing the floor, and that, while the sewer was thus open, the plaintiff stepped into the sewer near the south end.

At the close of plaintiff's testimony and again at the close of all the testimony, the defendant demurred to the evidence but was overruled. The jury returned a verdict for $2000 and defendant has appealed.

It is urged by defendant that plaintiff is not entitled to recover. This contention is based upon the fact that the injury was alleged to be due solely to the slippery floor and the failure to maintain a covering for the sewer. And defendant's point is that since the slippery condition of the floor is a necessary incident to the business of killing and dressing hogs, and the sewer was a method adopted by defendant to dispose of the waste and sewage of that department, and plaintiff was fully aware of the fact that it was open and unprotected, then plaintiff assumed the risk and cannot recover.

Plaintiff was a mature man. He had had six or seven years' experience as an .employee in packing houses. He had worked in the hog killing room in question at various times before. He admitted having worked the last time in this room for at least a month prior to the accident but would not say how much longer. His foreman says he had worked there for seven months before. Whatever the length of time, he admitted that he was perfectly familiar with the conditions in the room. It is also undisputed that the slippery condition of the floor was a necessary and unavoidable incident of the work carried on. Plaintiff also admits that he knew the northern portion of the sewer was uncovered, never had been covered, and that he had prior to the accident observed the sewer and that while the south portion was covered the northern portion was not. In fact, he admitted that the sewer had to be kept open at the north end in order that, at intervals, the hair from the scalded hogs, which came out on the floor and collected in the sewer, could be removed therefrom so as to prevent it from getting choked; but he says this opening need not have been

more than fourteen inches long while defendant allowed it to be open and unprotected for a distance of from five to eight feet. He was well aware of this fact because he frequently removed the hair from the sewer at the north end and could not help but know the extent of the opening even if his knowledge of the room did not otherwise disclose it to him. So that there is no question but that he knew the extent of the opening, and the slipperiness of the floor.

The proof showed further that the sewer had to be in the floor in accordance with governmental regulations concerning cleanliness, and that in character and method of maintenance it was like all other sewers in hog killing rooms. Plaintiff says, however, that the sewer in the cattle department was entirely covered. Whether it was necessary to have an opening in that sewer to remove the hair is not shown. Cattle are not scalded but are skinned with the hair remaining on the hide, so that it may be no opening is required to be maintained as in the hog room.

A servant assumes the ordinary risks inherent in the nature of the business upon which he enters so far as they, at the time of entering the business, are known or should be readily discernible by a person of his age and capacity, in the exercise of ordinary care. And where a business is obviously dangerous, and is conducted in a manner which is fully known to the servant at the outset, he assumes the risk of its conduct in that manner although a safer method could have been adopted. [1 Sher. and Red. on Neg. (6 Ed.), sec. 207e.] "It is well settled that a servant assumes the risk of every defect of which he had actual or constructive notice when he accepted the employment so far as he comprehends, or ought to comprehend, the peril involved, *even though such defect was due to the master's personal negligence,* provided there was no express promise to remove the defect." [1 Sher. and Red. on Neg. (6 Ed.), sec. 209.]    Where

the conditions are constant and long standing, and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and dangers are obvious to the common understanding, and the employee is of full age, intelligence and adequate experience, and all these elements of the problem appear without contradiction, from the plaintiff's own evidence, the question of assumption of risk becomes one of law for the decision of the court. [Patton v. Texas Ry. Co., 179 U. S. 658.]

Now, before we can uphold defendant's contention and debar plaintiff from any right of recovery on the ground of assumption of risk, we must say that that assumption appears as matter of law. There is no doubt but what the books are full of cases holding that a master may conduct his business in his own way according to his own methods, and a servant who knows the hazards of that way and engages in the service assumes the risk. [Saversnick v. Schwarzchild, etc. Co., 141 Mo. App. 509; Harrington v. Wabash Ry. Co., 104 Mo. App. 663.] There are also many cases in which the appellate courts have held as matter of law that the plaintiff assumed the risk and therefore could not recover. Such, for example, is the case of Disano v. New England Steam Brick Co., 40 Atl. 7. There a servant was employed in shoveling clay from a slippery platform into an unprotected opening. While so doing he slipped into the opening and was injured. It was held as matter of law that he had assumed the risk. A similar case, among many others, is the case of Tinkham v. Sawyer, 27 N. E. 6 where a plaintiff worked on a floor made slippery as a necessary and unavoidable incident of the work and, slipping thereon, thrust his arm into revolving machinery. He was held to have assumed the risk. But in all of these cases it will be noticed that, if the workman slipped, the danger of being injured by going into the machin-

ery was apparent and certain. But in the case at bar, while the liability of slipping into the sewer was apparent, yet the *danger* arising therefrom was not apparent unless the plaintiff knew it was likely to contain hot water. Now while it seems to be implied from the allegations of the petition that hot water was carried in the sewer as a part of the work, and the character of the business would seem to require hot water to be therein, yet the plaintiff says that he had never known the water in the sewer to be anything more than warm enough to be comfortable to the hands. And in other evidence it was shown that, although the sewer was connected with the hot water overflow pipe, yet that water got cooler as it neared the north end of the sewer because it mingled with the cooler water coming from other parts of the plant and also with water falling on the floor of the room and finding its way to the sewer, and that it was only when there was a cessation of such cool water that the temperature of the water running in the sewer rose to burning heights. Plaintiff says he was accustomed to remove hair from the north end of this sewer with his hands and that at all times the water was merely warm and pleasant. If now plaintiff did not know that the water in the sewer was likely to be scalding at times and had no notice to the contrary, then he cannot be held to have assumed the risk. It might be that the scalding water would disclose itself by the steam that would arise and thereby notify plaintiff that it was dangerously hot at times, but we are unwilling to say so as matter of law. The evidence does not disclose what the conditions of the atmosphere and temperature of the room were. The work may have been carried on, and doubtless was, in a hot, wet and steamy atmosphere so that the scalding condition of the water in the sewer would not disclose itself. Plaintiff swears he had never known of the water in the sewer being anything more than lukewarm and pleas-

ant, and there is no indisputable showing that he had actual or constructive notice to the contrary. The question of assumption of risk, therefore, rests upon whether or not plaintiff had such notice that the water was likely to be dangerously hot. This being a question of fact for the jury, the question of assumption of risk becomes a question for the jury and not for us. Although the petition implies that the hot water was in the sewer as a part of the work and therefore plaintiff would have notice of its heat, yet as there is evidence tending to show that he did not have such notice, we are unwilling to so construe his petition as to debar him from recovery on the ground that, as matter of law, he must be held to have assumed the risk.

On the other hand it is doubtless because of the implication in the petition above noted that the defendant did not go into the question of plaintiff's knowledge of the likelihood of the sewer containing hot water. If plaintiff knew of the *danger* on account of the likelihood of the sewer containing hot water, then, even though he fell in at the unprotected north end, he cannot recover since he knew it was uncovered and knew the extent to which it was not protected. In addition to this, plaintiff was walking north on the west side of the sewer and on reaching this unprotected five feet he says he came to a post which had some articles piled at its base and that he walked around this pile on the east and thereby stepped nearer to the edge of the sewer when he slipped. He admits that he could have gone west of the post and away from the sewer but did not do so. He also says he could have gotten to the point on the platform, where he was intending to go, by going up the stairway on the east side near where he worked during the day and where the sewer was covered instead of going north alongside the open part of the sewer to the stairway on the north side of the room; that it was a matter of taste

which way was the better, but that he went this way as he had always done. This, however, if militating against a recovery, would not do so unless he knew of the danger arising from hot water in the sewer.

Plaintiff's petition alleges that, on a floor that was negligently permitted to become greasy, he slipped near the north end of a sewer where it was negligently left open and unprotected. There was evidence, however, that he did not slip and fall into the sewer at the north end but *stepped* into it at the south end which was provided with a cover according to his own admission. Defendant, therefore, asked an instruction based on this evidence telling the jury that if he attempted to cross said sewer at the south end and stepped into it at that point he could not recover. This was refused and it was not covered by any other instruction. The instruction should have been given. The petition alleged specific negligence and, if the injury happened the way defendant's witnesses say it did, there was a divergence between the allegation and the proof. It cannot be claimed that this variance is not fatal. The petition did not allege that it was negligent to have hot water in the sewer. On the contrary, as stated heretofore, the implication is that the hot water was rightfully there as a necessary part of the work to be accomplished.

The judgment is reversed and the cause is remanded. All concur.